IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES B., )
)
        Plaintiff, )
)
v. ) 1:22CV1103
)
MARTIN J. O'MALLEY,[1] )
Commissioner of Social Security, )
)
        Defendant. )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff James B. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The Parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on October 28, 2020, alleging a disability onset date of October 31, 2019 in both applications. (Tr. at 15, 205-11.)[2] His applications were denied initially (Tr. at 62-83, 108-17), and upon reconsideration (Tr. at 84-107, 125-32). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 133-34.) On March 14, 2022, Plaintiff, along with his attorney, attended the subsequent telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 15.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 28-29), and, on October 26, 2022, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #4]. Although Plaintiff's application for SSI does not appear in the record, the omission of this application has no bearing on Plaintiff's claims.

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

4

capacity ('RFC').'" Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 17.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

5

> diabetes mellitus, COPD, left and right shoulder degenerative joint disease, lumbar degenerative disc disease with compression fracture of the lumbar spine, obesity, neuropathy, depression, and anxiety[.]

(Tr. at 17.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 18-20.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform medium work with further limitations. Specifically, the ALJ found as follows:

> [Plaintiff] is limited to frequently climbing ramps or stairs; frequently kneeling, crawling, crouching, stooping, balancing, with standing and walking on even terrain; occasional climbing of ropes, ladders, and scaffolds; avoiding concentrated exposure to hazards such as unprotected heights and moving machinery, fumes, dusts, gases, poor ventilation, and extreme heat; occasionally operating foot pedals; frequently reaching overhead; and never driving an automobile for completion of job tasks. He is limited to performing simple, routine, and repetitive tasks for two hours at a time where tasks are learned by demonstration in 30 days or less. He is limited to tolerating routine changes in the work environment.

(Tr. at 20-21.) At step four of the analysis, the ALJ determined, based on the testimony of the vocational expert, that all of Plaintiff's past relevant work exceeded the above RFC. (Tr. at 27.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 27-28.)

Plaintiff now raises only a single challenge to the ALJ's decision, contending that at step five of the sequential process, in evaluating whether sufficient other work exists in the national economy, the ALJ failed to identify and obtain a reasonable explanation for apparent conflicts between the testimony of the vocational expert ("VE") and the Dictionary of

Occupational Titles ("DOT"). In <u>Pearson v. Colvin</u>, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit explained the ALJ's obligation at step five:

> To answer this final question—whether sufficient other work exists for the claimant in the national economy—the ALJ "relies primarily" on the <u>Dictionary</u>. Soc. Sec. Admin., <u>Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions</u>, Social Security Ruling (SSR) 00–4p, 2000 WL 1898704 (Dec. 4, 2000), at *2 (the Ruling). The ALJ "may also use" a vocational expert to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy. <u>Id.</u>
>
> Because the expert's testimony can sometimes conflict with the <u>Dictionary</u>, the Social Security Administration has promulgated a multi-page, formal ruling to "clarify the standards for the use of vocational experts" at ALJ hearings. <u>Id.</u> at *1. The Ruling requires that the ALJ "inquire, on the record, whether" the vocational expert's testimony "conflicts" with the <u>Dictionary</u>, and also requires that the ALJ "elicit a reasonable explanation for" and "resolve" conflicts between the expert's testimony and the <u>Dictionary</u>. <u>Id.</u> at *2. The ALJ must, by determining if the vocational expert's explanation is "reasonable," resolve conflicts "before relying on the vocational expert's evidence to support a determination or decision about whether the claimant is disabled." <u>Id.</u>

<u>Pearson</u>, 810 F.3d at 207-08 (internal brackets and ellipsis omitted). In <u>Pearson</u>, the Fourth Circuit thus clarified the steps an ALJ must take to identify and resolve apparent conflicts between a vocational expert's testimony and the DOT. Specifically, the Fourth Circuit held that, if an expert's testimony apparently conflicts with the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both (1) that the explanation was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT. <u>Pearson</u>, 810 F.3d at 209-10; <u>see also</u> <u>Rholetter v. Colvin</u>, 639 F. App'x 935, 938 (4th Cir. 2016).

Here, Plaintiff contends that the vocational testimony on which the ALJ relied at step five of the sequential analysis conflicted with the DOT as to all of the identified jobs. Specifically, the ALJ identified three representative jobs available in the national economy that Plaintiff could perform:

- Order Taker (DOT 922.687-058, 1991 WL 688132),
- Hand Packager (DOT 920.587-018, 1991 WL 687916), and
- Linen Worker (DOT 361.687-018, 1991 WL 672992).

Defendant concedes that the job of Hand Packager required frequent exposure to extreme heat and atmospheric conditions, both of which are precluded by the RFC in the present case. (Def.'s Br. [Doc. #8] at 6.) As such, an unresolved apparent conflict exists between this position and the RFC. However, Defendant contends that any error as to this position is harmless because no apparent conflicts impact Plaintiff's performance of the remaining two jobs. The Court agrees.

The DOT describes the job of Order Taker as including the performance of "any combination" of nearly twenty listed tasks "to receive, store, and distribute material, tools, equipment, and products within establishments." (DOT 922.687-058, 1991 WL 688132.) The position is described as follows in the DOT:

> Performs any combination of following tasks to receive, store, and distribute material, tools, equipment, and products within establishments: Reads production schedule, customer order, work order, shipping order, or requisition to determine items to be moved, gathered, or distributed. Conveys materials and items from receiving or production areas to storage or to other designated areas by hand, handtruck, or electric handtruck. Sorts and places materials or items on racks, shelves, or in bins according to predetermined sequence, such as size, type, style, color, or product code. Sorts and stores perishable goods in refrigerated rooms. Fills requisitions, work orders, or requests for materials, tools, or other stock items and distributes items to production workers or

8

> assembly line. Assembles customer orders from stock and places orders on pallets or shelves, or conveys orders to packing station or shipping department. Marks materials with identifying information, using stencil, crayon, or other marking device. Opens bales, crates, and other containers, using handtools. Records amounts of materials or items received or distributed. Weighs or counts items for distribution within plant to ensure conformance to company standards. Arranges stock parts in specified sequence for assembly by other workers. May use computer to enter records. May compile worksheets or tickets from customer specifications [ORDER DETAILER (clerical) 221.387-046]. May drive vehicle to transport stored items from warehouse to plant or to pick up items from several locations for shipment. May complete requisition forms to order supplies from other plant departments. May prepare parcels for mailing. May maintain inventory records. May restock aircraft commissary supplies, such as linens, glasses, emergency kits, and beverages, and be designated Commissary Agent (air trans.). May be known according to specific duty performed as Cloth-Bin Packer (textile); Cooler Worker (dairy products); Order Filler (any industry); Produce Clerk (retail trade) II; Tool Chaser (any industry).

(DOT 922.687-058, 1991 WL 688132.) Plaintiff highlights three of these tasks as apparently conflicting with the RFC assessed in this case: (1) "Conveys materials and items from receiving or production areas to storage or to other designated areas by hand, handtruck, or electric handtruck," (2) "Fills requisitions, work orders, or requests for materials, tools, or other stock items and distributes items to production workers or assembly line," and (3) "May drive vehicle to transport stored items from warehouse to plant or to pick up items from several locations for shipment." (DOT 922.687-058, 1991 WL 688132.) Specifically, Plaintiff argues that "[t]he requirement to convey items from receiving or production areas, use an electric handtruck, and distribute items to workers on an assembly line apparently violates the ALJ's RFC restriction to 'avoiding concentrated exposure to hazards such as . . . moving machinery.'" (Pl.'s Br. [Doc. #7] at 13 (omission in original).)

Plaintiff also similarly challenges the position of Linen Worker, which is described as follows in the DOT:

9

> Prepares laundry for processing and distributes laundry, performing any combination of following duties: Opens bundles of soiled laundry. Places bundles onto conveyor belt or drops down chute for distribution to marking and classification sections. Weighs laundry on scales and records weight on tickets. Removes bundles from conveyor and distributes to workers, using handtruck. Fastens identification pins or clips onto laundry to facilitate subsequent assembly of customers' orders. Sorts net bags containing clean wash according to customers' identification tags. Sorts empty net bags according to color and size. Collects identification tags from lots of laundered articles for reuse. Moistens clean wash preparatory to ironing. Operates power hoist to load and unload washing machines and extractors. Stacks linen supplies on storage room shelves. Unloads soiled linen from trucks. May be designated according to duties performed as Bundle Weigher (laundry & rel.); Chute Worker (laundry & rel.); Clipper (laundry & rel.); Linen-Supply-Room Worker (laundry & rel.); Net Sorter (laundry & rel.). May be designated: Pin Sorter And Bagger (laundry & rel.); Pin Worker (laundry & rel.); Washing-Machine Loader (laundry & rel.) II.

(DOT 361.687-018, 1991 WL 672992.) Plaintiff highlights three potential tasks involved in the position of Linen Worker: (1) "Places bundles onto conveyor belt or drops down chute for distribution to marking and classification sections," (2) "Removes bundles from conveyor and distributes to workers, using handtruck," and (3) "Operates power hoist to load and unload washing machines and extractors." (DOT 361.687-018, 1991 WL 672992.)

As to both of these positions, Plaintiff contends that these DOT descriptions conflict with the VE's testimony that an individual with Plaintiff's RFC could perform these positions. In evaluating this contention, the Court begins with the limitation in Plaintiff's RFC that Plaintiff contends is in apparent conflict with the DOT:

> avoiding concentrated exposure to hazards such as unprotected heights and moving machinery, fumes, dusts, gases, poor ventilation, and extreme heat.

(Tr. at 20.) The Social Security Administration has noted that these types of environmental limitations are set out in the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"):

> An "environmental restriction" is an impairment-caused need to avoid an environmental condition in a workplace. Definitions for various workplace environmental conditions are found in the SCO; e.g., "extreme cold" is exposure to nonweather-related cold temperatures.
>
> . . . The "hazards" defined in the SCO . . . include: moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals.

Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II And XVI: Determining Capability To Do Other Work—Implications Of A Residual Function Capacity For Less Than A Full Range Of Sedentary Work, SSR 96-9p, 1996 WL 374185, at *8-9 (July 2, 1996). Here, the environmental limitations identified in the RFC relate to "unprotected heights and moving machinery, fumes, dusts, gases, poor ventilation, and extreme heat." (Tr. at 20.)

> Notably, the SCO's evaluation of these hazards for the position of Order Taker are:
>
> Extreme Heat: Not Present – Activity or condition does not exist;[5]
>
> Atmospheric Cond.: Not Present – Activity or condition does not exist;[6]
>
> Moving Mech. Parts: Not Present – Activity or condition does not exist;[7]

---

[5] The SCO provides that "extreme heat" means "[e]xposure to nonweather-related hot temperatures." Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix D (U.S. Dep't of Labor 1993).

[6] The SCO provides that exposure to "atmospheric conditions" means "[e]xposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the respiratory system, eyes, or the skin." Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix D (U.S. Dep't of Labor 1993).

[7] The SCO provides that limitations related to "moving mechanical parts" means "[e]xposure to possible bodily injury from moving mechanical parts of equipment, tools, or machinery." Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix D (U.S. Dep't of Labor 1993).

Case 1:22-cv-01103-JEP   Document 11   Filed 03/04/24   Page 11 of 15

High Exposed Places: Not Present – Activity or condition does not exist.[8]

(DOT 922.687-058, 1991 WL 688132.) Similarly, the SCO's evaluation of these hazards for the position of Linen Worker are:

Extreme Heat: Not Present – Activity or condition does not exist;

Atmospheric Cond.: Not Present – Activity or condition does not exist;

Moving Mech. Parts: Not Present – Activity or condition does not exist;

High Exposed Places: Not Present – Activity or condition does not exist.

(DOT 361.687-018, 1991 WL 672992.)

Thus, although Plaintiff contends that there appears to be a conflict between the RFC limitations that limit his exposure to moving machinery and the DOT descriptions of the jobs identified at step five, the DOT descriptions for the positions of Order Taker and Linen Worker specifically provide that they do not involve moving mechanical parts of equipment, tools, or machinery, and state specifically that this condition is "Not Present – Activity or condition does not exist." See DOT 922.687-058, 1991 WL 688132; DOT 361.687-018, 1991 WL 672992. In these circumstances, there is no apparent conflict between the VE's testimony and the DOT positions of Order Taker and Linen Worker relied on by the ALJ. Indeed, as Defendant correctly notes, other courts within the Fourth Circuit—and across the nation— have found no conflict, apparent or otherwise in similar cases. (See Def.'s Br. at 9) (citing Carter v. Kijakazi, No. 3:20-cv-00672, 2021 WL 4931724, at *6 (S.D.W. Va. Sept. 30, 2021) (finding no apparent conflict where the RFC included a restriction to no "hazards such as

---

[8] The SCO provides that the description of "working in high, exposed places" reflects the "[e]xposure to possible bodily injury from falling." Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix D (U.S. Dep't of Labor 1993).

moving machinery," but the DOT specifically provided that the job of nut and bolt assembler does not present hazards involving moving mechanical parts despite references to using machinery in the job description); Stover v. Berryhill, No. 5:19-CV-00062, 2019 WL 2895023, at *10 (S.D.W. Va. June 6, 2019) (finding no error where the plaintiff argued that the "assembler" job requires the use of machines, such as an arbor press, punch press, tap spot welding or riveters and the RFC specifically provided that plaintiff was to avoid moving machinery, but the DOT also provided that "moving mechanical parts" were "not present" in this position); Maxwell v. Saul, No. 1:18-cv-00894-GSA, 2019 WL 3546837, at *5 (E.D. Ca. Aug. 5, 2019), (holding no inconsistency between RFC providing plaintiff should not be exposed to hazards such as "moving machinery" and dishwasher and laundry worker jobs where the DOT provided that hazard of moving mechanical parts was not present in either occupation); White v. Colvin, No. 3:16-cv-0322, 2018 WL 6537150, *4 n.4 (M.D. Pa. Nov. 21, 2018) (RFC required the plaintiff to "avoid all moving mechanical parts on all moving machinery" and the name of the carding machine operator occupation identified by the VE "suggest[ed] it would require some exposure to moving machinery," but the DOT reflected that this occupation involves no exposure to moving mechanical parts); Spears v. Berryhill, No. EDCV 16-2333-JPR, 2018 WL 707989, at *9-10 (C.D. Cal. Feb 5, 2018) (no conflict existed where the RFC prohibited operation of "moving mechanical parts" and "moving machinery" but did not preclude use of machines altogether and job of proof-machine operator must necessarily operate machines, but the DOT makes clear that "moving" mechanical parts or machinery are not involved in that process); Hensley v. Colvin, No. 15-66-GFVT, 2016 WL 3964336, at *6 (E.D. Ky. July 21, 2016) (rejecting the plaintiff's argument

13

that jobs referenced by the VE required exposure to moving machinery contrary to the RFC limitation of avoiding all exposure to moving machinery where all six jobs identified by the VE required no exposure to moving mechanical parts per the DOT); Wigmore v. Colvin, No. 6:12-cv-0611-ST, 2013 WL 1900621, at *18 (D. Or. April 16, 2013) ("The mere fact that [the plaintiff's jobs] require the use of a machine does not render the VE's testimony inconsistent with the limitations in the hypothetical [precluding moving machinery], especially in light of the DOT descriptions which specifically exclude the use of '*moving* mechanical parts.'")); see also Amanda L.S. v. Kijakazi, No. 21 C 5775, 2023 WL 2711663 (N.D. Ill. Mar. 30, 2023) (collecting cases).

Plaintiff's argument to the contrary relies on a single case, Horton v. Colvin, No. 2:15-cv-01548-RBH, 2016 WL 4761600, at *7 (D.S.C. Sept. 13, 2016), which involved an RFC providing for "no exposure to hazards" including "dangerous machinery," as opposed to "no concentrated exposure" to "moving machinery," as in this case. More importantly, the decision in Horton first identified a conflict between visual limitations in the RFC and the specific visual acuity designations set out in the SCO. Id. at *6-7. In light of this clear unexplained conflict, the Court ordered remand without considering the provisions of the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles regarding moving mechanical parts or other environmental limitations. Id.

Given the overwhelming balance of the case law, the Court concludes that no unresolved apparent conflict exists in the present case, and the ALJ was entitled to rely on the expert's testimony at step five of the sequential analysis regarding the representative

14

occupations of Order Taker and Linen Worker, which the ALJ found had, respectively, 419,000 jobs nationally and 251,000 jobs nationally.[9]

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #7] is DENIED, that Defendant's Dispositive Brief [Doc. #8] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 4th day of March, 2024.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[9] The Court notes that Plaintiff also contends that there is an apparent conflict with respect to the description of an Order Taker to the extent the DOT description indicates that the worker "[m]ay drive vehicle to transport stored items from warehouse to plant or to pick up items from several locations for shipment." Plaintiff's RFC includes a limitation to "never driving an automobile for completion of job tasks." (Tr. at 20.) However, as noted by Defendant, the DOT description does not indicate that driving a vehicle is required, and the VE testified that driving an automobile was not required for completion of job tasks. (Tr. at 57.) Unlike Pearson, this is not a situation where the DOT indicates that the position requires occasional or frequent activities in apparent conflict with the VE's testimony. Moreover, even if the position of Order Taker were not considered, the representative position of Linen Worker remains in significant numbers, with 251,000 jobs nationally. See Critchley v. Colvin, No. 5:15-cv-08288, 2016 WL 3030211, at *8 (S.D. W. Va. May 4, 2016) (collecting cases and finding that even 5000 jobs in the national economy constituted a significant number); see also Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (holding that 110 jobs within the region is not "insignificant"); Cole v. Colvin, No. 1:13cv868, 2014 WL 4060145, at *4 (M.D.N.C. Aug. 14, 2014) (holding that 2,500 jobs in the state is significant and "the ALJ only needs to identify one job that [a claimant] can perform, given [the claimant's] RFC and vocational capabilities, that exists in the national economy in significant numbers"); Shaw v. Saul, 1:18CV268, 2019 WL 3577550 at *9 (M.D.N.C Aug. 6, 2019) (holding "that 103,000 Room Attendant jobs existed in the national economy which constitutes a significant number of jobs" (internal citation omitted)). Therefore, any error as to Order Taker is harmless, and substantial evidence still supports the finding that Plaintiff can perform work that exists in significant numbers in the national economy.